## LOUISVILLE & NASHVILLE R. CO.
### v.
## KLEMPNER BROS.

Court of Appeals of Kentucky.
Jan. 29, 1954.

Woodward, Hobson & Fulton, Robert P. Hobson, Louisville, for appellant.

Robert L. Page, Albert F. Reutlinger, Louisville, for appellee.

STEWART, Justice.

The issue to be resolved in this appeal is whether appellant here and plaintiff below, Louisville & Nashville Railroad Company, was entitled to a peremptory instruction at the conclusion of all the evidence; or, stated otherwise, whether the verdict was flagrantly against the weight of the evidence.

On September 21, 1931, Morris Klempner, now deceased, entered into a written contract with appellant for the construction and maintenance of a spur track which the former afterwards built into the junk yard operated by him in Louisville. Through several conveyances the junk yard and the spur track became the property of appellee, Klempner Brothers, a corporation, and was under the control and management of the latter at the time of the occurrence of the accident which gave rise to this litigation.

In the contract it was provided, so far as pertinent here, that Klempner Brothers, which had assumed all rights and obligations under the contract, would not allow or create " * * * any structure within eight feet from center line of said track, and that it will not place or permit any structures or obstructions, of either a permanent or temporary nature, on said track * * *." It was further agreed that Klempner Brothers would indemnify and save harmless appellant from any and all claims for loss of or damage to property or injury to person caused directly or indirectly by the existence of any obstructions within the limits of the clearance above specified.

The spur track runs approximately north and south and its course curves to some extent. In the early afternoon of December 15, 1948, a cut of five cars was being shoved from north to south on this track by an engine at the north of the cars when the southernmost car, of the coal-car or gondola type, broke loose and started down-grade toward the junk yard. W. P. Knopf, a switchman in the employ of appellant, ran after and caught up with this car and climbed up from the east side of the track on the north end of it. In an effort to stop it, he started winding a hand-brake wheel on the side of the car to his right. While attempting to brake the car, he either lost his balance and fell from it or he was pulled or scraped off it as it passed and his body caught on a pile of scrap along the east side of the track.

Thereafter, Knopf's administratrix made claim against appellant for his death and the latter settled this claim for $25,000, incurring expenses in connection therewith in the sum of $79.60. This action, instituted by appellant against appellee on the contract of indemnity mentioned above, sought in the lower court to recover these two amounts. Appellant's demand is cast upon the theory that Knopf lost his life by reason of the existence of an obstruction on appellee's premises which proximately caused the employee's death and which made appellee primarily liable under the indemnity clause of the contract. Appellee's answer as amended was a denial of all the affirmative allegations of the petition and a plea that Knopf's death was caused solely by the wanton and wilful acts of appellant. The cause came on for trial and, after overruling appellant's motion for a directed verdict in its behalf when all the evidence was in, the case was submitted to the jury on the issue as to whether Knopf " * * * lost his life by reason of the existence, location or condition of any obstruction of any kind on the premises of Klempner Brothers, * *." The jury found for appellee.

In urging a reversal, it is contended appellant's evidence conclusively established that Knopf was killed by being pulled or scraped off the car by his coming in contact with junk piled along the spur track on appellee's premises. In addition, it is argued the verdict rendered below is not supported by any believable evidence.

Appellant's eyewitnesses to the accident were C. P. Thomas, the switch foreman in charge of the car movement involved, who was on the third car behind the one Knopf climbed upon just before the latter was injured; H. F. Wemes, a foreman for the Kentucky and Indiana Railroad Company, who, standing by the car at the time it became uncoupled, saw Knopf get up on the ladder of the car to set the brake; and Douglas E. Hansford, a switchman for appellant working under the direction of Thomas, who was on one side of the spur track opposite to Knopf when the latter mounted the car.

Each of these men testified in substance that Knopf was knocked off the car by his

body striking or catching on scrap piled along the track in appellee's junk yard. According to them, he was thrown over the brake wheel, landed on his head between the tracks and remained there unconscious until help arrived. Later that day he died from the injuries he received. A picture of a pair of new trousers Knopf was wearing on the day of his death, introduced as an exhibit, showed two large rents in the back, one near the belt line and the other in the seat. It is asserted this physical fact alone is conclusive as to appellee's claim that Knopf was pulled off the car by some sharp projecting object; appellant reasons that a simple fall would not tear decedent's trousers in this manner. Five witnesses of appellant stated positively there was a clearance of 10 to 12.5 inches between the side of the car and the pile of scrap. Thus it is apparent, appellant contends, that Knopf's body could not have passed through this space.

Appellee's version of the mishap conforms in many respects to that of appellant up to the actual moment of the accident. Jack Klempner, appellee's secretary, stated he was standing near the track when the car broke loose and he saw Knopf climb upon it. This witness said he then rushed after the car, since he feared Knopf would be hurled off when it struck the bumping block at the end of the spur track. Klempner testified that as Knopf attempted to mount the side of the car his head struck something and "his feet went up— just made a somersault," and he landed between the tracks. Klempner stated that Knopf, a man nearly sixty years of age, had been injured in one of his legs by an air hose earlier in the day and he indicated this impaired condition could have contributed to his fall. Klempner reached Knopf as the latter lay unconscious between the tracks, seized him by the shoulders and dragged him out of the path of the on-coming train that was moving to retrieve the loose car. This witness explained also that the two torn places in Knopf's trousers could have conceivably been caused when he dragged him by the shoulders from between the tracks. Klempner's testimony that Knopf fell off the car and was not scraped off it by coming in contact with any protruding scrap is substantiated by that of two other witnesses of appellee. All three of these witnesses denied that any scrap material was piled sufficiently close to the track to have knocked the deceased from the car. Klempner estimated Knopf was four or five feet from the stack of scrap when he started to fall.

Appellant criticises Jack Klempner's testimony by pointing out, first, that he said he was on the track when Knopf was hurt, next, that he stated he was running four or five feet behind the car when Knopf was thrown off it, and, lastly, that he testified he was 2½ car lengths distant when he saw Knopf fall. It is also contended Klempner contradicted himself in testifying as to the location of the scrap heap on appellee's premises. It is argued such inconsistencies, along with others that are mentioned, wholly discounts the probative value of this witness' evidence and renders him unworthy of belief. The testimony of M. H. Hays, another of appellee's eyewitnesses to the accident, is incredible, it is maintained, because he made certain statements that appellant considers to be such gross exaggerations. The third witness of appellee who saw the accident occur, namely, W. C. Cawthon, according to appellant's reasoning, merely speculated as to how Knopf received his injuries.

■ It is true, as has been pointed out, that Klempner's testimony contains several inconsistent statements, but we cannot say for this reason that his evidence in its entirety should be ruled out. It is not uncommon for a witness to contradict himself. Assuming for the sake of argument that we should disregard all of Klempner's proof, we still have the testimony of Hays and Cawthon, each of whom gave an unwavering account as to how the accident occurred. We do not subscribe to appellant's assertion that one of these witnesses flagrantly mistated certain facts and the other testified in a conjectural fashion. Each testified positively Knopf fell off the car and each said he did not see any scrap

that could have struck him or scraped him off at the moment.

 This is a case in which the evidence is in sharp conflict. Unquestionably, one side or the other was rather reckless with the truth but it is not the function of this Court to usurp the prerogative of a jury and decide as a matter of law which set of witnesses is worthy of belief. A definite issue, supported by substantial competent evidence on behalf of each party, was presented and neither the trial court nor this one may exercise independent judgment in evaluating testimony of the type under consideration. We conclude appellant was not entitled to a peremptory instruction and it follows that the verdict is sustained by the proof.

Wherefore, the judgment is affirmed.